Incorporated, Indel, v. City of Chicago Would you step up and identify yourselves? Good morning, Your Honor. At this court, I am Fermi Weiler, Counsel for Cadillac Trucking and the individual plaintiffs, Richard McDonald, Tom Stelman, and Chad Stanko. Thank you for your attendance. Good morning, Your Honor.  All right, well, so you know, we are usually kind of open. If we ask a lot of questions, we give you leeway. So just take your time and present your case. Good morning, Your Honor. Once again, I'm Fermi Weiler, Counsel for the appellants in this action. Your Honor, this appeal is based upon the entry of summary judgment on three counts of a multiple count complaint and the dismissal of a fourth count, the complaint seeking declaratory judgment concerning various practices of the City of Chicago in connection with the enforcement of its overweight truck ordinances. Your Honor, as the statement of facts has shown and as the record shows, Cadillac Trucking is in the business exclusively for the purpose of... I think the counsel would... I apologize, but I think we pretty much understand the factual setting in which the matter arose. Very well. Tell us why on one of those counts again, which is presently pending on administrative appeal, we still have subject matter jurisdiction to entertain a declaratory judgment. Your Honor, there have been 50 encounters between the City of Chicago and Cadham Trucking. Only one of those encounters, as an example, which would supply the court with facts, which would indicate what the types of encounters are. We are not seeking any remedies with respect to the conclusion... However, on the administrative appeal in that administrative action, you will get at the very least some sort of stare decisis kind of determination that will apply to your declaratory action as well, won't you? And also, while you're at that, why don't you tell us how the three individuals have standing, so to speak, to pursue the debt action as well. Okay. Those individuals are employed regularly and exclusively in the transportation of overweight vehicles, and they have had several encounters as well. They are subject to the fines that are imposed by the City of Chicago, and they are also subject to the arrests which they allege have been made on a regular basis. So they would have standing as well as Cadham. The City of Chicago's truckweight enforcement statutes are enforceable either against the owners of the vehicles or its drivers. What gives them greater standing, in fact, although the declaratory judgment action statute talks about interest, but why would they have more standing than any other trucking company and the employees of any other trucking company that are going to be subject to these statutes and ordinance? Justice Gordon, I can't tell you that these individuals have any more standing than any other person who may seek a permit or drive an overweight truck. I believe, though, that the declaratory judgment act indicates that where there is a controversy with respect to the interpretation of the statute, that anyone engaged in that controversy does have the right and consequently the standing to bring that matter to the court for declaration. Getting back to the original question of why it was actually a request for clarification, but it turns into a question as to whether there can be concurrent jurisdiction with the administrative appeal and the declaratory judgment action, particularly since the declaratory judgment action, when it is adjudicated, won't it also encompass and moot the administrative appeal? Not necessarily, Justice Gordon. The matter that is up before the administrative review pertains really only to count four, or the section of our brief, which is count four. Well, I want to moot that particular, the portion of the declaratory judgment action that's presently pending that pertains to that count. Okay. It may moot, whether or not Mr. Stellman, who is the subject of that administrative review who has been penalized with $2,000, whether or not he will have to pay that $2,000. It would not do anything, we believe, to declare the practice of requiring the posting of a bond for Mr. Stellman to recover his trust when a citation has been issued to a driver when there is no ordinance which indicates that such a bond is required as a condition of releasing that vehicle. So with respect to whether or not Mr. Stellman is subject to a fine for that one incident would not necessarily determine that that practice is or is not lawful. But vice versa, it would. The determination in the deck action would determine the merit of the appeal on the specific violation involved there. Very well put, John. I would agree with that. So the question is can you really have two separate appeals pending where they intersect for at least that one action? And this is under the administrative review. The subject matter of that review is the appropriateness of that fine under those circumstances. We do not believe that that necessarily reaches the proprietary right, I'm sorry, the appropriateness of the city's practice of holding vehicles hostage. And this is something that could happen continuously during the presentation of that administrative review, not only to Mr. Stellman but to McDonald, Stanko, and others who are not partners to that administrative review. In your pending administrative review, are you raising the issue of whether the city can go forward with an adjudicative hearing under the statute? We've preserved every issue in the administrative review. Well, isn't that one of the key issues that we're facing in this case? That is. That is. Except I don't know that the fact that there is somewhere out there a dependency of an administrative review that would deprive someone of an opportunity to get a declaration under the Declaratory Judgment Act for an ongoing practice. So you're saying that simply because Mr. Stellman was fined on one occasion that the administration of that case must be completed before he can seek a declaration as to the right of the city to continue to do what it's doing, and on this record, on at least 50 occasions. So we don't believe that a pending administrative review deprives- Well, it would be raised to the cause, would it not, to the extent that any issue could have been changed with regard to that action. Well, with respect to Mr. Stellman, in that case, it might be. But with respect to Mr. McDonald and Stanko and- Mr. Stanko and Mr. McDonald, not necessarily. Well, as far as I'm concerned, there are other fish to fry in this case. I won't hold you to other fish. Thank you very much. Okay, thank you, Henry. And as long as we're on that subject, the least weighty or the least complicated, in my judgment, of the issues is the practice of requiring a bond as a condition of the removal of a vehicle. There is simply nothing in the city's ordinance- Except the word bond. Now, what does the word bond mean in its own connotation? First, I imagine the bond is over the individual and not over the truck. Is that clear, necessarily? I believe it is. Because you can bond property. You call it ransom, but that may be the subject of the bond. And if the ordinance says that as a condition of removing the vehicle or that a bond shall be placed on the vehicle, the statute, the ordinance says, the person to whom the citation is issued shall be required to post a bond. In these cases, it's the driver who is issued that citation, and we have no objection to the requirement that the driver, but where the proper permits are acquired, there should not be a reason to- Doesn't the city, at least with respect to the bond, have some sort of status akin to that of a creditor or contingent creditor? And if so, can there not be a device of self-help to ensure collection with respect to the- that is so closely related to the subject matter of the activity that triggered the requirement? I do not believe that self-help could be pursued under the conditions of due process unless there is an underlying regulation or statute that authorizes that condition. And in this case, there is nothing that authorizes that. We'd all like to have self-help. We'd all like to collect our debts when we have one, but the principles of due process provide that we cannot simply exercise that simply because we have made a determination- Now, with respect to the individual, I take it you're not challenging the right of the city to detain the individual until he's found? Well, that pertains to another issue, but with respect, if there are police involved, let's assume we have police. Are those to satisfy the requirement of the necessary type of constabulary that should be involved? That's right. Presuming that they were detained by a police officer that was properly trained, there is an ordinance which says that person to whom a citation has been issued may be required to post a bond or shall post a bond. We have, in this appeal, no controversy with respect to that. We do not challenge their authority to do that because they undertook to pursue due process and properly promulgate a statute to that effect. But with regard to the holding the trunk for bond, they have not done that. And that's really the issue, and we don't believe it would conform with due process for them to do that and to exercise that self-help, Your Honor, absent having an underlying statute to that effect. Just for clarification, to your knowledge, does the city have overweight scales? Yes, it does. And where are they located? Those overweight scales are either maintained throughout the city. They can be used. A freight yard might be used. Typically, with the encounters that Kevin and the other plaintiffs in this case have, they are portable scales which are brought out by the truck weight enforcement officers. Previously, they were police officers. Now they are unsworn. So does the vehicle go to the scale or does the scale come to the vehicle? The scale comes to the vehicle in most cases. So they don't move it? Pardon me? It's not moved? The truck is not moved. Well, what the process is is that scales are brought out. They are erected. The truck is required to mount the scales. And then when the weighing is done, then the truck is moved beyond the scales. And then we have no objection to the portions of the statute that require the truck to be there and to follow the instructions until the weight is completed. And there is a specific provision in the statute that addresses that. But once that weight is completed, and the facts of this case show that there is nothing that that truck, that requires the presence of that truck. All of the weight enforcement officers... Unfortunately, I didn't have an opportunity to inquire, but does any other municipality that is a home rule entity have anything similar to this? Or is this the only one, if you know, in Illinois? This is the only one which... I'm not saying if it was written as most normal municipalities do under the state act, and therefore, you know, they get a percentage of the revenue, but they don't get as much as the city seems to want. That's correct. Other municipalities do have truck weight enforcement ordinances. But they write them under the state statute. Typically, they would adopt ordinances that were reflective of the state statute. So they could, and they do, as far as you know, also write in some jurisdictions, ordinance violations instead of the state violation. Yes. But is that done in conjunction with... In other words, two tickets or one ticket? What I'm trying to say is most of the municipalities write it under the state, and in conjunction with that, they may also write a municipal ordinance violation, saying that they have concurrent power. That's right. Typically, our experience is that it is written only under one or the other. Okay. Just as an example, I appeared in the village of Lamont, where the village of Lamont had its truck weight ordinance, and that was written as a municipal ordinance was prosecuted by the city. However, in most cases, the city of Chicago is the only one that does not force that with police officers. And it goes to a court. It also goes to a court. Yes. It goes to an adjudicated hearing. I have never been before at an adjudicated hearing on a municipal tribunal that is authorized under 625.511.1-2.1-2. The administrative tribunal. So I'm asking if the only purpose of this is if the city of Chicago gets more revenue by attempting to do this. That would be my jaded view of it, that it's revenue-driven. I believe that that is the case. Could you address the statute on the permissibility of the adjudicated hearings? Yes. Number one, it's clear that 625 ILCS 5-1-2.1-1-2. And it specifically relates to home rule municipalities. And it indicates that home rule municipalities are entitled to establish administrative adjudications of municipal code violations. And that is defined as any proceedings not within the park. It's defined as violations of municipal code with three exceptions. Well, isn't that really the issue? Two Romans. Two Romans, that's correct. Two Romans and language and except. And that is, incidentally, the same language that the legislature chose. For the reporting. For the reporting, yes, because that and accepting is there. We think that is fairly clear. And the issue is, well, yes, that's why we're here. I can tell you, you probably have three judges here who are happy to rule the way the legislature would have us rule if we could figure out what the legislature means by this statute. And I think that we would need to avail that the court would then avail itself of the rules of statutory construction. And number one, one of the principles is the fact that it's unhappily drafted does not prevent the interpretation of that statute according to the plain meaning of the language that's there. And the fact that the lack of a third Roman numeral would say, well, what did they mean? And that mean would be the same if you impose a Roman numeral three, because it starts with, these are the things that you can adjudicate. And it says except. And then there is language that follows. One is things that would not be, for which there's no homonal authority. Two is any offense under the vehicle code or a similar offense that is a traffic regulation. And then it would say and except. And it says and except for any reportable offenses under Section 6-204 of the Illinois Vehicle Code. That is an additional exception. So any reportable offense, whether or not it's having to do with the movement of a vehicle in your view, is barred. Yes, and I think that the logic of that, if you look at the things that are accepted, for instance, being in control of a motor vehicle while under the influence of alcohol is not a moving offense. It's not a moving violation, but it's certainly a reportable offense. Well, I'm going to allow the softball to you, just to give your opponent something to think about. I can see why there are only two Romans, because the first doesn't deal with the statutes, but deals with the relationship to the municipality. The second deals with the statutes, and it may have two courts, both of which deal with statutes, which would explain why there's no three. I agree with you completely. No kidding. I hate to miss that pitch. I hate to friggin' miss it. I see that my time is up. There are two other issues that need to be addressed. You can keep going if you want. With respect, I think the court does have a sense of what the essence of that is. There is also the question that was established in the court below, whether or not this is a traffic violation or a similar offense. We believe that it clearly is. The dictionary definition of traffic includes not only the actual movement, but it also includes those vehicles and pedestrians that are moving in traffic. The second clause of Roman II differentiates between a statute under the Motor Vehicle Code, on one hand, and substantially similar statutes or ordinances which have to do with the movement. That's a different language, isn't it? That is. That is. And it is that there's a traffic regulation governing the movement of vehicles. And we would submit that the traffic regulation of the city is simply adopted, word for word, the vehicle code, the overweight section. What would the... And specifically says... I'm sorry. No, go ahead. Okay. And specifically says that it relates to the operation on city streets. What's the difference between movement and operation if you negate or disclaim the possibility that operation may not require movement? With those parameters, Your Honor, I don't know that I have an answer to that, other than I don't believe that that... Because the statute uses both words. That's correct. And I believe that it would be almost impossible to operate a vehicle without moving it. And I believe the record shows that the city has admitted, both from their counsel and their enforcement officers, that stationary, sitting off of city streets, you can load these vehicles all you want, and it's not a violation. So what would account for the surplusage of having movement and operation? I was actually moved to look up Webster's word operate, and they gave me Oprah. But that means work, work, to have a function. Now, that truck can have a function simply by storing materials. That's correct. More theoretically, a vehicle that would be loaded on the street for some other purpose, other than storage, maybe a crane attached to it or something like that, without the vehicle actually moving, would be operating. To cause it to have a function. But under the facts in this case, there are no circumstances under that that these are all applied to... Well, sure, but the question is helping us interpret what the meaning of the statute is, and that's really what we're asking about. Right. And we believe that it would be impossible to operate the vehicle without moving it onto the street, and that that really indicates that that's the grappling of that city ordinance. The other practice to which the plaintiffs have taken exception was the practice of engaging these weight enforcement officers who are not trained under the Police Training Act to actually make traffic stops and to enforce what are highway rules. They're either traffic or highway rules, is what the statute says. And this statute specifically says, whether it's operation or whether it's movement, it can't be enforced unless you're on the highway, and the whole purpose of the overweight statute is to protect the integrity of the streets from overweight vehicles. So we believe that the Police Training Act says that when you're engaged to enforce the highway rules of the city, that you must be trained under the Police Training Act. The city did, at one time, up until two years ago, I believe, engage police officers to enforce the statute. It's a practice that has since been implemented that is now objective. Doesn't one of those provisions provide that the training need not be completed at the beginning of the exercise of authority by that individual but has to be commenced within six months? And then what happens in that event to the police type of functions initiated within that original six-month period? In other words, to what extent do we know, even from, although we have that industrial part case, that 136, the last third, but why should the failure to provide that degree of training vitiate the activity of the appointed state or city official who is designated to do that particular kind of enforcement? The Police Training Act addresses who may enforce certain ordinances, and it is specific with respect to who must have that police training in order to engage in the practices that are set forth. But that police training is not mandated at the commencement of the appointment of that particular individual. As I recall, I'm not looking at the ordinance at the statute right now, but that's the impression I got when I read it. My understanding, my reading of the statute, is that what that addresses is that that training is not required of anyone who was in office at the time of the adoption of the Police Training Act and gives them six months to then go get that training. So it doesn't emasculate the entire police force, because a whole police force of a community may have not had that training, and it gives them an opportunity to get that training. And, of course, that's home rule. And it is imposed on home rule. It's a home rule provision. Yes, it specifically says that home rule units. And this is a highway statute, and we believe that it requires that degree of training. And one of the reasons, and this is not just something that we're trying to get off the hook, CAB's concern is that these trucks weigh as much as 150,000, 160,000 pounds. They are permitted. These are the trucks that come and deliver the equipment that build buildings like this so that that function serves the necessary function. What their experience has been, as the record shows, is that people who are armed with something that looks like a tow truck may pull up. The driver has no way of knowing is that a tow truck, is that an enforcement officer. And then these gentlemen have, on occasion, pulled immediately in front of these trucks, which take a considerable amount of time to stop. So it's not something that is just a lark on behalf of the government. It's a very, very serious issue. And the level of training is important with regard to that. Also, there is that issue, is that once you stop, this person, the city says, we're not arresting you. And even though arrest is defined by having created a circumstance under which the person who is subject to the stop has forms of reason to believe that he is free to go. So they say, you are absolutely not free to go, but you're not under arrest. So we believe that that, in addition to the... Well, the Slonsky case doesn't have a problem with that. Nor does the later case, actually, saying that this kind of stop is somewhere between a probable cause stop and a reasonable suspicion stop. Something like a carry stop. I don't know whether they had carry at the time of 40, after Justice Goldberg wrote that opinion. But the later opinion identifies it as a carry stop. See, and if it were a carry stop, and if it were a reasonable suspicion, that that stop and that detention lasts as long as it takes for the individual, the individual officer, to determine whether or not there is cause, probable cause for an arrest, or that he satisfies his curiosity within the mind of the officer, whether or not an offense has been made, whether that suspicion has been legitimate. This case is, you stay here until you pay us $10,000, $20,000. The fines in these cases and the bond that's expected is substantial. So what the difference is, it's not just we're going to check this out and we're going to detain you here for us to have a reasonable determination whether something is going on. Once they have made that determination, the practice of the city to which Cadham objects, and the plaintiffs, are that you stay here until you post the bond. Well, you don't go anywhere until that happens, and that can be indefinitely. So that takes it out of that purview of Terry or any of the other cases that are there. You also have a situation where, presumably in a bond situation where there's access to the courts, you could appear before a judicial officer and challenge the appropriateness of a given bond. And is there such a procedure in this case? There's none. You stay there until we tell you you can go. Well, Judges are constantly in hand, and we seem to agree with you about that. But on the other hand, that People v. Montgomery case and the Blonsky case don't seem to take this topic seriously as they would a criminal detention for purposes of calling it an arrest. That's true. And this would be the case, and I agree, that this isn't as serious as somebody being taken down to the station and locked in a room and saying, empty your pockets and do all of that. That hasn't been there. But even in that case, that came to an end when the police officer says, we're done with you. On the other hand, when Teller came and took the truck, they didn't chase him and put him in chains, did they? They did not, but they charged him $2,000 for doing that. The question is whether that kind of time in dealing with administration of city streets, I know there's that kind of language in Slotsky, I think, or either Slotsky or Montgomery, that provides a kind of a third category where the city could act with some degree of detentive force without necessarily constituting an arrest. The only way that I can respond to that is to, although they didn't chase Mr. Stellman, it did not prohibit them from enforcing their ordinance. They did serve a summons on him, as in any other civil case. They said, you had to come, you violated one of our ordinances, and he appeared, and there was an justification with respect to that. So the fact that it does, giving unauthorized persons the ability to detain without restriction and without, and only to the effect that they're responsible, we have people who are authorized to say that you stay here until we say we're done with you, that that is an arrest, and that it's not necessary to give a city, in enforcing a waste restriction, the authority to have that detention, because they do have a mechanism by which they can enforce that. It still doesn't smell like an arrest. Okay? Courts sometimes use that word, smell, and it's given force of law. Of course, I'm not purporting to use it that way, but I'm expressing some sensibility about this kind of detention that would seem to separate it from what the Constitution was protecting by imposing standards of probable cause due process. That's right. And it's not only that. It's really who has the authority to do that is what's at issue here, and who has been trained to make those even detentions. But to the extent, the only way that I can answer that and how it smells to me, when I look at these cases, Your Honor, what I see is that it says that what is relevant is what is in the, what is formed, what is a reasonable formation in the mind of the person detained as to whether or not he is free to leave. And it gives a number of factors that can be considered, whether or not there's clubs and handcuffs and guns involved. It says none of those factors are determinative. And so part of the smell test that doesn't pass the smell test for me, Justice Gordon, is that we have now a city that says, you don't have a reasonable formation of the fact that you can't go, but we are telling you you can't. Look at us, look me in the eye, and I'm telling you you cannot go. But please, don't form a reasonable position that you are ready to go. But if it was a police officer with a badge and a gun saying that, you would know you couldn't go. Absolutely. Look, I think one of the... If you were stopped by one of the people in the yellow vest outside, and they tell you that you can't go, would you have the same reaction as if an officer with a badge and a gun said that? Traffic management people. Right. If I hadn't been charged with a fine on numerous occasions, I might think that. But this is a practice that is an ongoing practice, and this is a party to this case who has come here and said, you are not free to go. And the question is, are they authorized to give that message to someone? And I believe that the 2nd District has made a determination that a truck person who is pulled over by a highway administrator would formulate that reasonable conclusion that they are not free to go. Any time, your position would be, any time there's a sanction attached to departure of any nature, even what if it were like a $5 fine as opposed to a $2,000 fine. But I guess that's a question of whether it's de minimis. But that is only money, and it's money that is geared towards streamlining the operation of traffic management. I use those terms because I find some source for them in the Montgomery and the Slonsky case. But in this case, Your Honor, the condition of removal, the condition of moving, is the payment of a bond. It's that you're staying here until you pay us money. It's not you're staying here until we issue a citation. The Academy had not objected to staying here and to submitting to a way that's the same thing as paying a toll. You can't run the toll booth. If you have a scale there or if you present a scale, we'll get on that scale and you can stop us. Does that ordinance really require the truck driver to stay there? Because the fine, in one of your arguments in your brief, you point out that the fine is required from the owner of the truck, not from the driver. Is the presence of the driver required, or is it simply the presence of the truck? And if it's the presence of the truck, when we're dealing with property, are we dealing with the same due process that we should confront when we deal with people? Let me see if I can present to you what our position is with respect to the various parts. On one hand, we have objected to the city taking an owner's truck without any kind of ordinance that says that requires a bond as a condition of removing that truck from an owner when it has issued a citation to the driver. On the other hand, the city does have an ordinance that requires the driver to post the bond. And we don't have any objection to the city requiring the posting of a bond if that detention is made according to the mandates of the Police Training Act. And that's where the rubbings is that the driver is required to stay until they post the bond. According to the city's ordinance, the truck, according to the city's ordinance, is not required to remain there. The city believes that its ordinance says that, but I don't believe that there's anything in the statute that requires that. But now, we have a truck enforcement officer who has no training enforcing a highway law of the city of Chicago and saying to a driver, you're staying here until I feel like policing you, and you're not going until you post a bond in the amount of the time which amounts to thousands of dollars. So that would be the issue with respect to that. And I believe the other issue, Your Honor, was the dismissal of the count with respect to requiring both a state permit and a city permit. We believe that the statute is fairly clear that the administration of the vehicle code should be uniform throughout the state and that the statutes say who has jurisdiction over a roadway. That jurisdiction follows the maintenance responsibilities. In this case, the state has maintenance responsibilities over state highways. It may engage someone else to perform on its behalf that maintenance, but the maintenance responsibility remains with the state. The statutes say that a city, with respect to streets under its jurisdiction, may require permits. The state, with statutes under its jurisdiction, may require permits. We believe that the logic of this is found in the fact that the state who maintains the state highways is the authority who shall administer how heavy the loads should be and that you wouldn't want to have to get a permit from every jurisdiction on a state highway to move a load from where the machine originates to where this machine is ultimately going to be used. So we believe that, and we rely on our briefs with respect to that. I see that our time is done. If Your Honor wanted to hear more on that, I would simply be happy to address that further. With respect to that, we believe that 625 ILCS, in the context in which that is used, when it refers to chapter, it means, as the legislature indicates, the word chapter is used for all statutes. It says 625 is the statute, 5 is the Act, 11-207 is the section. And in the context in which that is used is that because that section says these are the statutes to which this does not apply, and it lists things that are not contained in Section 11. So in the context in which chapter is used, clearly the legislature meant to use that chapter. But you do use that in the industrial park case. We do with respect to seat belts. We acknowledge that it's my responsibility to do that. But I think in this context that it's a larger issue. Thank you. Thank you. Your Honor, there is no dispute that the city has broad home rule authority over the waste of vehicles, and that before there will be preemptions, the intent to preempt must be explicitly stated. In this case, the plaintiff did not identify any such express preemption. Accordingly, the circuit court correctly answered judgment for the city, and this court should affirm that judgment. Well, why isn't 2.1-2 sufficient? Turning first to the administrative adjudication count, as Your Honor points out, 2.1-2 contains three, a number of categories that are exceptions to the city's ability to adjudicate an administrative proceeding for an violation. That particular statute states that the intent of it is to extend to municipalities the ability to adjudicate an administrative proceeding to the extent permitted by the Illinois Constitution. We therefore submit that this court should interpret the exceptions that follow that narrowly, because the Illinois Constitution extends to home rule municipalities very broad authority to regulate its affairs. Though we submit that no matter which way this court interprets the three clauses that follow small Roman numeral 2, the city's authority to adjudicate its waste and permit ordinances is not preempted. We submit in our brief, we explain why we think that it's a better reading of those clauses following small Roman numeral 2, is to read all of them together. Well, let's assume that, for the moment at least, that the first provision under 2 stands independently without further modification of the third provision. In that event, is it still your position that that does not apply to home rule municipalities? Yes, Your Honor. If you're referring to the any offense under the Illinois Vehicle Code clause, we submit that the city's ordinances do not describe offenses under the Illinois Vehicle Code, and this court should interpret that language to mean exactly what it does. Well, why doesn't it apply to offenses? Because you're talking about settlements? Basically, notice, pay us, we won't take it any further if you don't challenge us, et cetera. So you're saying that's not an offense. Now let me ask you this. Supposing you recover under that provision, is the state free to write a citation for the exact same violation and recover again? The state is free to write a violation. I mean, supposing you found this truck that's overweight, 500 pounds, you write it up, you recover the several thousand dollars for the overweight, et cetera. Now, can the same, supposing a policeman actually did the writing up, can the policeman turn around and write a citation for the state as well and recover an equal sum for the state, or let's not even talk about equal sums, although that's an issue, you know? But let's say any sum for that same violation. Or is that the double jeopardy type of problem? It appears that Your Honor's concern is getting to concurrent jurisdictions. Well, I mean, you're saying one is not an offense and one is an offense. But the question is, to what extent do they get in each other's face? I'm saying that one is not an offense under the Illinois vehicle code. I understand, but if in effect it gets into the face of the state's offense, then calling the cities a violation, not an offense, is simply verbiage. It's a different offense because, for example, the challenges are to two particular ordinances, the permit ordinance and the wait ordinance. Just to start with the permit ordinance. The violation, that ordinance says that the city's Department of Transportation can issue a permit for an overweight vehicle to travel on city streets, and that it is a violation to violate the term of that particular city permit. Now, if that is adjudicated in an administrative proceeding, what is being adjudicated is not an offense under the Illinois vehicle code. What's being adjudicated is whether there was compliance with the terms of a city permit. That is quite a different problem. Let's not talk about permits. Let's talk about overweight. Okay. With respect to the wait ordinance, that's a different matter. I don't think I have a problem with permits. The city wants to relax standards, although it may describe the uniformity that the state is looking for. But the more obvious problem is where you're dealing with overweight offenses. With respect to the other ordinance, the overweight ordinance, the language of that ordinance states that it contains certain exceptions, including it says, except as provided by statute or other ordinance, no person shall operate on any public way within the city any motor vehicle whose weight exceeds the limit described in the Illinois vehicle code. So that incorporates the table of a particular weight within the ordinance, but it does not make a violation out of what is at issue in the ordinance. My question then, again, my question is, if you're making that, I think that that distinction was also deference and, as a matter of fact, it's meant as a compliment to the city in the exercise of their cashewistry in splitting these permits. Because, in effect, you're talking about a state offense providing for specifically measured types of overweight, mimicked by the city statute, with the city collecting, albeit without informing the Secretary of State. And I'm asking, once the city exercises its power with regard to its ordinance that mimics this specific provision, is the state then free to independently enforce that violation, or is there double jeopardy? And if there's double jeopardy, I think that that substantially waters down your distinction. Your Honor, the state is free to enforce its statute within the realm of the jurisdiction. No, but I mean, if truck X is fined $2,000 for one particular trip, can the state then come along and re-fine that same truck for that same trip for that same overweight? And the question is, if they could, isn't that exactly what the statute is designed to prevent, that prohibits the city under certain circumstances from having an administrative hearing in the rule of a court appearance? Changing Justice Gordon's scenario just a bit, what if one of your designees, whatever you call these enforcement people, simultaneously arrives at the same time a police officer does? And one writes a citation under the city ordinance, and the officer writes the citation under the state statute. It's the same scenario with a little twist that Justice Gordon's talking about. Tell me another twist. What if the city street mourns the state highway? Well, that's the question I was going to raise, Your Honor, which is, what are the roads that we're talking about? The state can write tickets for the roads that are within its jurisdiction. The city has jurisdiction over the roads that are within its borders on which it can write tickets. If there's an overlap, then they're two separate offenses. You mean to tell me that the state statute, that the vehicle code, does not cover the city streets? I'm not saying it doesn't cover any streets. I'm not saying it does not cover any streets within the city. No, no, no, I don't mean any streets. I'm not talking about Roosevelt Road. I'm talking about all streets. Well, I would have to look at the language of the statute. My point is simply that the particular statute that is the Illinois Vehicle Code provision, for it to be the same as, which is what this language requires, for it to be the same as, in effect, under the Illinois Vehicle Code, it has to state, we submit, it should be interpreted narrowly, to mean it has to state the exact same offense. The intent of the legislature was to remove from the power of the city to take away adjudication of what the state would be adjudicating on its own behalf. The particular offenses that are offenses under the Illinois Vehicle Code. But are we doing just that by taking the revenue away from the state? But we haven't done nothing to prevent the state from enforcing its own vehicle code. But if you did this under Circuit Court of County, the state and the city would be apportioned. I don't know that, Your Honor, how it would work if the city was not able to proceed in administrative adjudication. I mean, if the city is able to have an overweight ordinance, presumably, it could seek penalty for the violation of that ordinance. And whether it's in an administrative proceeding or whether it's in a circuit court, if it's a proper exercise of the city's home rule authority, which I don't think there's any question that there is. I don't think the plaintiffs are claiming we don't have the authority, the home rule authority, to control the weight of vehicles on the city streets. Because there are effects for the city. His argument is where you're taking it. To what court? His argument is about which court it can go to. And we submit that the language of this statute says we can't take it to administrative proceedings only if it is an offense under the Illinois Vehicle Code that we're trying to take away from the state. We've described a different ordinance. Or a substantially similar having to do with governing the movement of vehicles. Substantially similar. That's true. There's a different clause, and I'm happy to turn to that one. And you do have Hanover Park in your way. Hanover Park. And that's what Justice Rutkowski wrote it. Justice Gallagher concurred it. I mean, those are two names that get some respect around. Well, I'm happy to address Hanover Park, Your Honor, as well. To turn first to your question, Your Honor, about the similar offense that is traffic regulation governing the movement of vehicles, we submit that that should be interpreted to give meaning to the phrase governing the movement of vehicles. It's not just any similar offense that is a traffic regulation. It's a similar offense that's a traffic regulation specifically pertaining to the movement of vehicles. Traffic is defined in the Illinois Vehicle Code. It's defined as vehicles using the highway for purposes of travel. So if the intent was any regulation pertaining to the use of the highway for purposes of travel, then the legislature would have ended this clause right after traffic regulation. Instead, it included the next clause, which is governing the movement of vehicles, which must modify and limit the broader category of traffic regulation. It can't just be any regulation pertaining to the use of highways. It has to specifically be one that governs the movement of vehicles. And we've heard... Now, do you make a distinction between the word operate and the word movement? Yes. Or do you kind of depend on that distinction? Well, it's correct, Your Honor. There is a distinction between operating and moving in the ordinances themselves. Otherwise, both words would not have been included. Except that I think later on in that same statute, they abandoned the word movement and just used the word operate. Well, correct. But what is preempted is the ability to adjudicate an administrative proceeding, an offense that's governing the movement of vehicles. So in order for it not to be within the city's authority to adjudicate, then it has to be governing the movement of vehicles. And so operate, the weight ordinance, talks about the operation. And the permit ordinance talks about, you know, the operation or movement. However, it's not an offense to operate or move. It's an offense to not have a permit to operate or move. So in both of those cases, it's not about the manner in which the vehicle is moving. It's about the weight or whether that particular vehicle has a permit to transport the weight. So we submit that it does not fit within the language of traffic regulation governing the movement of vehicles. Well, I submit that I can see the constructs that you're attempting to create here. But I don't think that saying not having the permit is really inherently any different than moving without getting into permits. Because having a permit is simply a method of avoiding the prohibition. But the prohibition exists in the absence of a permit. And as such, it's no different than a statute that simply precludes you from doing a certain act, although they may not have a special provision that provides some exception to that provision. At most, I'm making myself clear. If I understand right, I mean, the question is, what can be adjudicated in administrative proceedings? And what cannot be adjudicated is a traffic regulation that governs the movement of the vehicle. The permit regulation does not govern the movement of vehicles. But the permit you're talking about is a permit to add extra weight. Correct. You're not talking about a permit to operate within the norms of the permissible uses. You're talking about a permit that may provide an escape patch from the excessive overweight, quote, ordinances or statutes. So I think you're making a lot more out of that word permit in attempting to alter the basic prohibition. I would submit that perhaps the permit ordinance could be thought of as the regulation of the use of the street. However, that is not preempted. What's preempted is a traffic regulation, meaning a regulation of the use of the street, that also governs the movement of vehicles. And we submit that's narrower. And we submit the court should interpret these exceptions as narrowly as possible to give effect to the intent that the home rule authority will be granted to adjudicate to the extent permitted by the Constitution. So, therefore, we urge the court to take the narrowest possible of the sensible interpretations. We submit we're submitting to you a sensible interpretation. There is a corresponding legislative intent when they prohibit home rule powers from impacting on the state legislation, not to narrow that prohibition down to where it becomes meaningless. But we submit that it hasn't yet become meaningless. Because there are similar offenses that are traffic regulations governing the movement of vehicles. And that, I think, is where we get to the Hanover Park case. In that case, there were municipalities, including home rule municipalities, that tried to make offenses out of the traffic regulations that are Chapter 11 of the Vehicle Code. And that was taking away from the ability of the state to determine reportable offenses and the other problems that Your Honor were referring to. And so, therefore, a similar offense that governs pertaining to the government, excuse me, that governs the movement of vehicles would be outside the home rule authority. But not just any old traffic regulation that pertains to the use of the street. Well, let's attack it on your term for a moment and see if it holds up. Supposing the violation involved is a movement violation, not a standing still type of violation. Your position would then be, since the statute at its core does not simply restrict itself to movement, but includes operation, therefore, a violation of the statute that involves only movement would not be inconsistent with the state statute that prohibits only movement. And I submit that I find that. In the old days, I would have liked that. Probably it's a little commuted and so on. But I don't think I'm too overly attracted to it right now. Well, we would submit that what is to be accepted is the traffic regulation that specifically, that the core of it, the intent of it, is to govern the movement of vehicles. And the intent of these weight ordinances is broader. And, therefore, it should be limited to what this language specifically says, governing the movement of vehicles, not governing the weight of vehicles that also happens to have an effect on the manner in which the vehicle is moved, but specifically governing the movement of vehicles. That's all that should be accepted. Now, I've been really talking about it. The damage to the roads is what you seek to prevent with these overweight regulations, both the state and the city regulations. And isn't it anticipated, in a reasonable view, that that occurs when these vehicles move over the road? Or just a vehicle that is parked on the road can have an effect. And there's also, it is primarily because of the damage to the roads, but there are also risks to the pedestrians that are walking along the side of the road. When it's not moving? Well, just the weight of the vehicle. When it's not moving? Well, if the truck is overloaded and it tips over onto the sidewalk, I agree with you, Your Honor, that the primary purpose of these ordinances concerns the damage that occurs to the roads. But there are other effects that make this within the home rule authority of the city to regulate. I don't think that when you have a standing vehicle, notwithstanding my earlier comment, that having excessive weight in the vehicle constitutes an operation. Operation, it seems to me, requires some function. More than simply being totally passive and just holding weight. Well, it could be that the driver is turned on the vehicle. Well, maybe he has to have the motor running at the very least. And then the question is, if the motor is running, is that also enough to give it movement? I don't think it turns on the fact of the way in which the city applies the ordinance. I think it turns on what is the essence of the ordinance. Is it, in essence, a traffic regulation governing the movement of vehicles? Or is it, in essence, a traffic regulation that pertains to the use of the highway and may govern when the vehicle is moving, may also govern when the vehicle is standing but just has the motor on? But only one of those is preempted from administrative adjudication. And that is the broader category that pertains to specifically the governing the movement of motor vehicles. And we assume that the essence of the city's ordinance is not governing the movement. It's governing the weight. Well, I think to operate a motor vehicle, if I had to make a determination off the top of my head, I would say the word operate has to relate to the fact that it's a motor vehicle. And if it operates on a motor vehicle, that almost invariably requires movement. So what if it's the motor in the cab of the truck is disconnected and you just have the trailer and there's no motor on the trailer? Well, it may be that the city would not be able to enforce its own ordinance, the language of which requires operation. But that wouldn't necessarily mean that what is preempted is the city's ability to adjudicate that particular violation in an administrative proceeding. That's the question. I don't think it pertains to the way in which the ordinance is enforced. I think it pertains to what is the essence of this ordinance and whether it fits in the language of what is to be preempted. And I submit that it does not. I wonder if there has been, and of course this is not at all something that is in the record and consequently is not something that I would consider in an attempt to adjudicate this, but I'm just curious to see if the city ever enforced this ordinance against vehicles, trucks that were at rest, stopped, and not in traffic. I do not know the answer to that question. I believe that it does. The enforcement does extend to just being... And possibly what this may reach, what the word operate may reach, is not simply a vehicle with a motor on it, but a vehicle in traffic that has its motor on it. And here's another question, which I'm sure you're going to be happy to hear. The purpose of the preemption statute, the purpose of saying that ordinances having to do with governing the movement of vehicles, why do you think the legislature was protecting the state's right to go forward exclusively on those? Because I think it pertains to the last clause, the reportable offense clause, and incorporating that language into the other parts. I think the intent was to not allow what happened in Hanover Park, which is a system of adjudication in which it wasn't going to the circuit court and it wasn't getting reported to the Secretary of State, these offenses that the Secretary has a duty to revoke licenses for, etc. That was an attempt of municipalities to circumvent what was an important program, an important interest of the state. And I think that this language, similar offense, pertains to moving violations and other offenses in which there's an interest of the state. There's no separate interest of the city necessarily, or the city's interest is not as great, and it's because the state has an interest in knowing about it. And that's why we urge the court to read the reportable offense clause in conjunction with the other clauses of this and not try to separate them out. However, I recognize that the language is murky. Well, how do you explain except for in that third prong? Let's not talk about murky. Let's explain those words. I would submit that if the intent was for the any reportable offense clause to be a separate exception along the lines of the first two, that instead of using an except for there, there would have been a Roman numeral three. Well, under my interpretation, because there is no Roman numeral three, that clause should be read to modify the other two that follow small Roman numeral two instead of standing alone as a third exception along the lines of Roman one and two. Grammatically, there is no way in the world how that language and except for could be read as just being and. Well, grammatically, we recognize, and we have conceded in our brief, that it is not the clearest interpretation. I think you're using a euphemism. It's not the clearest language. When you say it's not the clearest language, it seems to violate the entire grammatical structure of that provision. But we submit the plaintiffs don't have any better reading of the language. And because the language is underrated. Why is that? Because you don't have the three? Because there is no Roman numeral three. And the plaintiffs bring out the example of the reportable offense ordinance that says except for this and accepting that. But notice in that ordinance, there were no mixing of metaphors between the words except for and the Roman numeral. In that, it was just the words accepting and accepting and accepting. Here we have except for, Roman numeral, and except for. That, we submit, their interpretation does not account for the mixing of those two methods of distinguishing categories. I mean, on one level, aren't they saying except and then except from the except? That's what, I mean, that's a possible, yes. And so that's why we should, the reading of those clauses together makes sense. But we recognize that it's not, we submit it's not clear language. And therefore, the intent of the legislature must be considered. And we submit the intent is to extend, to the fullest possible extent, the ability to adjudicate. Unless the rationale for not getting the three is more coaching than the rationale for putting the words in except. And maybe the rationale is to use the paladins that don't usurp the fine potential that the statute on overweight trucks brings to the state. Or maybe it was just an afterthought and they added an except for. Right. Well, we submit that under any, either interpretation, the city's ordinances do not qualify as accepting, as exceptions. But we'll leave it to the court to decide which way to interpret that language. So, if I may then move on to another claim, if that's acceptable with the court. The next claim I want to discuss is the claim that pertains to the city's authority to regulate state roads within city's borders. And again, the city's authority over its affairs is broad. And the plaintiffs have not claimed that we lack formal authority to regulate the weight and permits on even state roads within city borders. Their contention is that two particular provisions demonstrate the intent to preempt that authority. And that's 11-207 and 11-208. But we submit that neither of those contains the language of express preemption that is required to supersede the city's home rule authority to apply its weight and permit ordinances to the state roads within the city's borders. 11-207 requires only that the chapter in which it is located, which is the chapter on the rules of the road, be uniform throughout the state. And in fact, the Illinois Vehicle Code, which is Act 5 of 625 ILCS, contains a definition of chapter. And that is defined as chapter of the Illinois Vehicle Code. So when 11-207, which is in the chapter 11, the rules of the road, uses the word chapter and says this chapter must be uniform throughout the state, it is specifically meaning the chapter of the Illinois Vehicle Code that it is located in, chapter 11, the rules of the road. That is not a preemption. Except for the provision that states that when you use the word chapter, you're talking more generically like the 725 or 625. And that's the chapter. Well, that does provide an overarching definition of chapter for the entirety of ILCS. However, there is a more specific definition that applies in this particular act, the rules of the road act. 5 is the act, and then chapter 11 has this provision inside of it. Actually, let me take a step back. 625 ILCS is not just the rules of, is not just the Illinois Vehicle Code. That's Act 5. It contains about a dozen different acts on boats, on taxis, on a number of other things. If the intent of the legislature had been for all of 625, which is a chapter under most normal definitions, to be uniform throughout the state, it would not have placed the provision requiring that uniformity, burying it in the middle of chapter 11 of one of those dozen acts. What about 208 referring to other so-called chapters? Well, 11208 does in fact refer to other chapters, but it itself contains two subsections, one of which contains the language of preemption, the other of which does not. They are relying on 11-208A as saying that the city does not have authority over state roads. That does not contain the language of preemption. The other provision in that chapter is subsection E, and that language is no unit of local government, including a home rule unit, may enact or enforce an ordinance that applies to motorcycles in that case, and that is, quote, a limitation under the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the state. If the intent was for A to also limit home rule powers, it would have included the language that I just read that's in E. What if chapter limits you in that your ordinance doesn't apply in our interpretation of chapter? Would you still say you have authority on your own roads? We have authority over our own roads. I think even A... Even if we say chapter says state only. Correct, because if this chapter, if the intent is to 11-207 to apply to the entirety of the chapter, and therefore the city doesn't have the authority over the state roads, there is 11-208A that specifically says that the city has authority over the roads within its jurisdiction, and so I think that the city would still have the authority. But, again, I submit that 11-207 only talks about chapter 11, the rules of the road, and the weight are in chapter 15, not in chapter 11. You really like this case. Well, like might be a strong word. Do you think the words, and no local authority shall enact or enforce any ordinance rule, regulation, conflict, or disprovision does not extend to home rule units? I think that that language does extend to home rule units, but it only extends... So why would you have authority over your own roads if you don't succeed in selling the narrow definition of chapter? Because in the other section, which is 11-208A, 11-208A says, the provisions of this code shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from, among other things, restricting the use of highways as authorized in chapter 15. So their argument is, not that we don't have authority over our own roads, that we don't have authority with respect to state roads. Even if we didn't have authority over state roads, we would still have authority over our own roads under that particular provision. But again, chapter 11 is all that must be uniform throughout the state, and that's the rules of the road. Chapter 15 is the weight of the vehicle, and that is not... Chapter is defined specifically to mean chapter of the Illinois Vehicle Code. So that is our argument with respect to that particular preemption argument. However, even if the city lacks authority over state roads, we have a fallback argument, and that is that the state has the ability to regulate its own roads. And the state, through the Illinois Department of Transportation, has issued a regulation requiring a city permit in addition to a state permit. And it has its own authority over its own roads. I think there's no question about that. So either way, the city permit requirement is authorized. But not having a city permit under that interpretation would be a state violation. Correct. That's correct. Moving then to count concerning the arrest, and I'll try to be as brief as possible, Your Honor. The plaintiffs appear now to be challenging whether we can punish their leaving. And that's different from whether or not there has been an arrest. The stop of the vehicle itself and the brief investigation in order to determine whether there is an ordinance violation, I think everyone is in agreement now, that that is not an arrest itself. And in fact, as Your Honors were mentioning, Montgomery and Slotsky both hold that that brief stop for purposes of investigation is more akin to a carry stop. It's not an arrest. So therefore, the city doesn't have to employ police officers in order to make that stop of the vehicle. Well, I'm not sure it doesn't carry a stop. Well, there is no authority that the plaintiff has cited that challenges the ability of the city's investigators to conduct these investigatory stops, including carry stops. So you could theoretically have a clerk from the library do a carry stop? Well, if that was within the power of the home authority of the city. And they aren't bringing any constitutional challenges. This is all based on whether there is authority under the home rule authority. They haven't brought constitutional claims. And they haven't even challenged the ability to make the stop, assuming it's not an arrest. They just say when it crosses the line into the realm of an arrest, then they cite some statutes that say there has to be a police officer. We're talking about whether it's an arrest or detention. Take a look at a case like Mendenhall that puts it really in the realm of a reasonable person and their perception as to whether they were free to go or not. If you have somebody who purports to be an authority saying you may not leave, certainly if it was a police officer saying that, you wouldn't have a ghost of a chance of saying that that wasn't an arrest. So it seems to me that what you're suggesting is you could put anybody you want out there and then the reasonable person would say, despite the assertion of authority to detain someone, that a reasonable person would not think that they were being really detained, that they would say, you have no authority over me, even though you're placing them out there with the direction to assert that the city's authority. Well, it depends on the particular fact of the particular case. And in Pulaski and Montgomery, this court held that even requiring somebody to stop, to turn around and drive to a wave station that's somewhere else, that the person did not feel free to leave, that still did not rise to levels of arrest. So this court should conform to be submitted to that authority and hold that the stop of the vehicle and the investigation for purposes of determining whether there has been an ordinance violation is a carry-stop equivalent that already the court has held is not. He goes beyond that because they're not challenging your right to say, stop the truck, wait until we bring in scales, get on the scale so we can determine whether there's a violation of the overweight ordinance. He's focusing on what happens after that. Correct, Your Honor. I agree. I agree with that. And therefore, up until the point there has been a citation issued, I think we're all in agreement, that's not an arrest. Once a citation is issued, however, the driver is free to go. They say the driver is not free to go. What the driver is not free to do is take the truck. And there's a difference. The truck is not being arrested. The truck is being seized as collateral. It is within the city's formal authority to seize collateral to secure payment of bonds. Do you happen to remember the specific language of the ordinance? Of the what? I'm sorry? The ordinance of the bond order. Right. A person issued a notice of violation of any weight limitations imposed by this chapter or any term or condition of a permit shall, upon issuance of the citation, deposit with the city a bond in the form of a money order issued by a money transfer service company which has been approved by the Commissioner of Business Affairs and Consumer Protection in an amount equal to the minimum fine established for such violations. But I suppose the problem is who is being bonded or what is being bonded. And I would have, frankly, liked to think, as you do, that it was the truck. However, your opponent points out cogently that the person in violation is the one being bonded, not the property. This isn't one of those Food and Drug Act kinds of breaks. There's a violator, and the bond only has applicability as a bond to someone who's in violation. The question is, who is that person? Now, the truck driver seems to be the one in violation. It may also include the owner. There may be two people who are in violation. And beyond that, the purpose of bond is generally to ensure appearance. The person of the driver is the person who is to appear. The truck doesn't have to appear. And if you say that you're citing the driver, who may or may not be, in most cases, is not the owner, what you're doing is you're seizing the owner's property for the violation of the driver. Just a point to clarify that point, Your Honor. What is cited is not the driver. The citation is directed to the trucking company. The driver is given that citation as agent, but it is not the driver's citation. It is the trucking company's citation. Isn't the prohibition against operating a vehicle that is overweight, and isn't the truck driver, regardless of who else may be in violation, but isn't the agent in direct violation? The trucking company is responsible. The agent is what operates the truck. It's different than any other kind of traffic violation, which goes to the driver first, and then possibly to others, depending on the nature of the violation. But it's the person who is operating the vehicle who's in violation. It's my understanding that these citations are directed to the trucking company, and that it is the agent who is there to receive it. But it is not the agent that has violated the overweight ordinance. Now, the agent may be cited personally if the agent interferes with the performance of the investigation, because there is an ordinance that says an individual who refuses or fails to stop and submit his or her voting. Exactly. So there are ordinances directed to the actions of the driver, but this particular ordinance that says the person issued notice of violation shall, upon issuance of citation, deposit with the city a bond. The bond is to secure... The appearance, is it not? The appearance, in answer, yes. But the word person we submit refers to not person in the sense of an individual, but person in the sense of who is operating, in this case it would be the trucking company. Well, you're going to have a major problem here, because in most instances the owners are corporations. Correct. So bonding with corporations is kind of strange. If you're going to leave out the driver, and leaving out the driver segregates overweight violations from any other kind of traffic violation, unnecessarily it seems, because why isn't it an offense to drive a vehicle that will wreck the street? Well, we submit that it's an offense, but the city council set forth as an offense, and we would submit that the municipal code uses the word person in many instances when it means not just individual, like a real person, but corporation or business entity, etc. That's a common use of the word person in the municipal code. The person being issued the notice of violation is a trucking company, it's handed to the agent, but the agent is then free to leave. Now, what the agent cannot do is take the truck. The truck is what is being, what the agent could do is post a bond, and then the agent would be free to take the truck. So all you need is a money order in his pocket for $10,000. That's right. Or he can leave it on the website. And the trucking companies do have in their truck, they have drafts with them, specifically for this person. They do. Wouldn't this be a lot easier if you just followed the state statute instead of, I don't know whoever drafted this, but having been a municipal attorney, it seems like you've gone way out of the way for a token amount of money, the difference between citing under the state of municipal ordinance. Well, we submit that there is. And I think you borderline on this game of stopping trucks not as police officers. I'm waiting for the guy that shoots one of your guys or refuses to stop and kills him. Whose fault was it? The guy that stopped? It's really not a well-directed ordinance. Well, we submit, Your Honor, that there are important interests that these ordinances are designed to address. To make money, and that's the whole and only purpose behind this. I mean, as a former city attorney, I dealt with this. I did games like annexing over the toll road. I annexed where you have the oasis. And I took the money away from the county. But there you had concurrent power. I'm not sure that you've got concurrent power here. Well, we certainly have power regarding the roads within our jurisdiction. And we submit that it's not just, with all due respect, Your Honor, it's not just to make money. It's because there are important interests at stake, which are the condition of the roads, the safety of the state. Ten years ago, 15 years ago, the city didn't even know what an overweight truck was. I know that because I had a meeting with the city. I submit that the city does not have any independent ordinance provisions that aren't already reflected in the vehicle code. So if the objective is to protect the roads, they could just as easily do it by issuing all of their citations for the state. But, Your Honor, the question is not whether it is wise. The question is whether it is within the home rule authority of the city and whether that authority has been preempted. So I understand your point that we shouldn't care if it's a money grab, which you just decided on the law. And I'm not saying that you may not have concurrent power, but I think it's limited in some respects. Fair enough, Your Honor. Moving then, as I've used a lot of time, just briefly to the final account. And that is whether there is authority to require a bond to be posted before the release. This is the account where Mr. Spellman is bringing his citation for taking the truck without posting a bond before the court and claiming that the city lacks authority, not under because it's preempted by the state, but because the city doesn't have enforcement that specifically allows that. That is currently the subject of a proceeding in the administrative review action. And we submit that that is outside the subject matter jurisdiction of this court. And this court, of course, does not have discretion to overlook that. Unless there are further questions, we respectfully request the court affirm the circuit court decision. Thank you. Anything that an hour and 38 minutes has been insufficient to discuss? No, there are just a few brief points. And that is, as you said, I would like to make a factual correction, a couple of factual corrections. One is that the ordinance says, with respect to requiring a bond, that bond is required of the person to whom the citation is issued. In this case, it's not as counsel indicated that, well, it's really the agent we're giving it to. No, she said, your opponent said, that the citation is issued to the company, to the owner. Isn't that correct, or is that a misstatement? That was a misstatement. In these cases, under all these facts, it was the individual driver. It's McDonald's. I'm sure it was an inadvertence, but it wasn't a misstatement. But in this case, they were issued specifically to McDonald's. You are the violator. Now, if they had, we may even have a different question, if the owner had been cited, but the owner has not been cited. I don't think citing the owner would necessarily authorize them to retain his property and requiring the owner as the violator. But under these facts, you give a citation to the driver, hold the driver as long as you want, make him post a bond if there was an otherwise lawful arrest. But once you've done that, once you've made that determination that this is the violator, there's nothing in the statute that says we can also usurp your property. So I think that was a factual misstatement. Also, one of the other things that I would like to point out to the court on these facts is that with respect to the determination of whether or not someone feels that they are free to leave, every representative of the city of Chicago who testified in this case says it is our specific intention to hold those people. Mr. Verdillo says it's my job to keep that person there until they post the bond. The city council, Rosemary Crimple, said these provisions are intended to hold that person there until that bond is paid. Well, Stallman didn't feel that way, and he got away with it. He did not get away with it. He was charged with $2,000. I understand, but he shot at him while he was leaving. But the question, but also, he was not. He was not a person to whom a violation was being issued. He was charged $2,000 because he removed property which shouldn't have been bonded anyway. He was not placed under arrest. It was the drivers who were required to stay there. That's the problem. And Rosemary Crimple specifically testified, referred to in the statement that we would believe that anybody would be taking a big chance if they left the scene, that everybody would do things in a way that would make people believe that they're taking a big chance if they leave. So that's why we believe there's an arrest. And also, I'd just like to just make the comment with respect to the preemption. 625.5-11-207 specifically says, the provisions of this chapter shall be applicable and uniform throughout the state and in all political subdivisions and municipalities therein, and no local authority shall enact. I think that that is very, very specific with respect, and I think that qualifies as preemption language, is that this provides every municipality and that no municipality shall have conflicting. With respect to whether or not that provides a chapter of the code, it says that this chapter, chapter meaning 625, it does not just mean chapter 11 because the context, if you look at 511-28, it says now, even though that everything has to be uniform under this chapter, another provision of 511 says, here are some provisions of the code that municipalities do have the right to administer if it's within their jurisdiction. And it doesn't limit it to just sexual assault outside of 11. And then with respect to that, it says, rose under their jurisdiction and jurisdiction has a specific statute for it. And then just the last one, Your Honor, with respect to comments made with respect to the Roman numeral 3 under the adjudication statute. The absent Roman numeral 3. The absent Roman numeral 3. And counsel has indicated that this would be fixed by the, if Roman numeral 3 were there, it would mean what the defendant says it means. But the absence of Roman numeral 3 does not mean that you can ignore the language that's there. And if it were an exception to the exception, it would not say and except. That and means an additional exception. So I think if you look at the language that's there, the fact that it's unhappily drafted or it's a challenge to relate to the various arguments that are being made by the parties, you can't ignore the language that is there. And the suggestion to counsel I think was incorrect that you have to assume that if they meant something, they would have used a different language. And the rules of statutory construction don't permit us to do that. All right. Thank you. Just to comment, at least in my view, this is one of the first cases in a long time I've seen where both sides, I mean, were overly well prepared and enjoyed what they were doing. But in addition, you know, some of these cases we get no matter what the briefs tell you where you're going to go. I'm not so sure here. I think your arguments were very worthwhile in helping us to think this through. I agree. Thank you both. Thank you. It was truly an enjoyable session for us. All right. First day in Michigan, right out the door.